UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
YUSEFF PARRIS, DAWN LITTLEPAGE, NTSHONA
LITTLEPAGE, individually and on behalf of all others
similarly situated,                                                                      Civil Action No.

                                        Plaintiffs,

                                                                                         COMPLAINT

                        -against-

LUCKY NEPHEW CONSTRUCTION SERVICES
CORPORATION, G & M REALTY L.P., CHARLES
ROLLINS, ALONZO WILLIAMS, DAVID WOLKOFF, and
GERALD WOLKOFF,

                                        Defendants.
-----------------------------------------------------------------------X

      Plaintiffs Yuseff Parris, Dawn Littlepage ("Dawn"), and Ntshona Littlepage

("Ntshona") (collectively, "Plaintiffs"), individually and on behalf of all others similarly

situated, by their attorneys, Katz Melinger PLLC, complaining of the defendants, Lucky

Nephew Construction Services Corporation ("Lucky Nephew"), G & M Realty L.P.

("G&M"), Charles Rollins, Alonzo Williams, David Wolkoff ("David"), and Gerald

Wolkoff ("Gerald") (collectively, "Defendants"), respectfully allege as follows:

### I. Nature of Action, Jurisdiction, and Venue

      1.     This is an action seeking equitable and legal relief for Defendants'

violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.*

("FLSA") and the New York Labor Law §§ 190 *et seq.* and 650 *et seq.* ("NYLL").

      2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an

action arising under the FLSA.

      3.     This Court has supplemental jurisdiction over the claims arising under New

York state law pursuant to 28 U.S.C. § 1367, in that the New York state law claims are so

closely related to Plaintiffs' federal claims as to form the same case or controversy under Article III of the United States Constitution.

4.      Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and Defendants conduct business through their employees, including Plaintiffs, within this judicial district.

## II. Parties

5.      Plaintiffs are individuals residing in the State of New York.

6.      At all relevant times, Plaintiffs were employed by Defendants.

7.      While employed with Defendants, Plaintiffs were regularly engaged in interstate commerce and/or in the production of goods for commerce.

8.      Plaintiffs are covered employees within the meaning of the FLSA and the NYLL.

9.      Defendant Lucky Nephew is a domestic corporation with its principal place of business located at 10 M Dennison Drive, East Windsor, New Jersey 08520.

10.     Upon information and belief, Lucky Nephew sells and rents construction material and equipment and provides various construction support services to contractors, such as security, fire safety, and labor coordination.

11.     Defendant G&M is a domestic limited partnership located at 1 Executive Drive, Edgewood, New York 11717.

12.     Upon information and belief, G&M is a real estate development firm.

13.     Defendant Rollins is an individual residing, upon information and belief, in the State of New Jersey.

14.     Upon information and belief, at all relevant times, Rollins was, and still is, an officer, director, shareholder and/or person in control of Lucky Nephew who exercises significant control over the company's operations and has the authority to hire, fire, and discipline employees, set employees' work schedules and conditions of employment, determine the rate and method of payment for employees, and maintain employment records.

15.     Defendant Williams is an individual residing, upon information and belief, in the State of New Jersey.

16.     Upon information and belief, at all relevant times, Williams was, and still is, an officer, director, shareholder and/or person in control of Lucky Nephew who exercises significant control over the company's operations and has the authority to hire, fire, and discipline employees, set employees' work schedules and conditions of employment, determine the rate and method of payment for employees, and maintain employment records.

17.     Defendant David is an individual residing, upon information and belief, in the State of New York.

18.     Upon information and belief, at all relevant times, David was, and still is, an officer, director, shareholder and/or person in control of G&M who exercises significant control over the company's operations and has the authority to hire, fire, and discipline employees, set employees' work schedules and conditions of employment, determine the rate and method of payment for employees, and maintain employment records.

19.     Defendant Gerald is an individual residing, upon information and belief, in the State of New York.

20.     Upon information and belief, at all relevant times, Gerald was, and still is, an officer, director, shareholder and/or person in control of G&M who exercises significant control over the company's operations and has the authority to hire, fire, and discipline employees, set employees' work schedules and conditions of employment, determine the rate and method of payment for employees, and maintain employment records.

21.     Upon information and belief, G&M is the developer of a pair of luxury residential towers called 5Pointz Apartments, located at 22-44 Jackson Avenue, Long Island City, 11101 ("5Pointz Apartments").

22.     Upon information and belief, in or around 2013, G&M contracted Lucky Nephew to provide on-site construction support services at the 5Pointz Apartments construction site ("5Pointz Worksite").

23.      Lucky Nephew hired and trained Plaintiffs and assigned them to work at the 5Pointz Worksite as construction support personnel.

24.     Plaintiffs performed their job responsibilities on G&M's premises at the 5Pointz Worksite.

25.     David and Gerald were often on the premises at the 5Pointz Worksite directing Lucky Nephew's employees, including Plaintiffs, on their job duties and responsibilities.

26.     On several occasions, Gerald directed a G&M supervisor, Joseph Doe [Last Name Unknown], to instruct Rollins to terminate certain Lucky Nephew employees.

27.     In or around January 2018, Gerald instructed Rollins to limit the number of hours that Lucky Nephew employees, including Plaintiffs Parris and Ntshona, worked at the 5Pointz Worksite.

28.     Upon information and belief, at all relevant times, Defendants were responsible for setting Plaintiffs' schedules and day-to-day activities and for supervising their performance.

29.     Upon information and belief, at all relevant times, Defendants had the power to discipline and terminate Plaintiffs.

30.     Upon information and belief, at all relevant times, Defendants were responsible for compensating Plaintiffs.

31.     Defendants are joint employers who jointly managed, supervised, hired, fired, and controlled Plaintiffs' compensation, and are jointly and severally liable in this matter.

32.     At all relevant times, Plaintiffs were covered employees within the meaning of the FLSA and the NYLL.

33.     Defendants are covered employers within the meaning of the FLSA and the NYLL and, at all relevant times, employed Plaintiffs.

34.     Upon information and belief, at all relevant times, Defendants' gross revenues were in excess of $500,000.00 per year.

35.     Defendants operate in interstate commerce.

36.     Defendants are subject to suit under the statutes alleged above.

### III. FLSA Collective Action Allegations

37.     The First Cause of Action in this Complaint, which arises out of the FLSA, is brought by Plaintiffs on behalf of themselves and similarly situated persons who were employed since the date three (3) years prior to the filing of this Complaint and who elect to opt-in to this action (the "FLSA Collective Plaintiffs").

38.     The FLSA Collective Plaintiffs consist of no less than thirty (30) similarly situated current and former employees of Lucky Nephew and/or G&M who have been victims of Defendants' common policies and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime wages and other pay.

39.     As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and the FLSA Collective Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA. This policy and pattern or practice includes, *inter alia*, failing to pay employees the applicable overtime rate for all time worked in excess of forty (40) hours per week.

40.     Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation.

41.     Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant damages to Plaintiffs and the FLSA Collective Plaintiffs.

42.     The FLSA Collective Plaintiffs would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable, and are locatable through Defendants' records. These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).

## IV. Rule 23 Class Allegations

43.     Plaintiffs bring the Second, Third, and Fourth Causes of Action of this Complaint on behalf of themselves and all similarly situated employees who were employed by Lucky Nephew and/or G&M since the date six (6) years prior to the filing of

this Complaint (the "Class Period") pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23.

44.    All said persons are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

45.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts from which to calculate that number are presently within the sole control of Defendants, upon information and belief, there are no less than sixty (60) members in the Class.

46.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay overtime compensation; failing to provide wage statements; and failing to provide payroll notices. Defendants' company-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

47.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests adverse to the Class. Plaintiffs are represented by attorneys who are

experienced and competent in employment and wage and hour litigation and class action litigation and have many times previously represented plaintiffs in wage and hour cases.

48.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy --- particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against Defendants.

49.     Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

50.     Because the losses, injuries, and damages suffered by each of the individual Class members are relatively small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

51.     Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

52.     The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

53.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members, including:

a)      Whether Defendants unlawfully failed to compensate Class members at the applicable overtime rate for hours worked over forty (40) hours per week, in violation of 12 NYCRR § 142-2.2;

b)      Whether Defendants unlawfully failed to provide Class members with payroll notices at the start of their employment, or at any point thereafter, in violation of NYLL § 195(1);

c)      Whether Defendants unlawfully failed to provide Class members, with each wage payment, a statement listing their rates of pay and basis thereof and anything otherwise required by NYLL § 195(3);

d)      Whether Class members are entitled to damages, and if so, the means of measuring such damages;

e)      Whether Defendants are liable for Class members' attorneys' fees

and costs; and

f)      Whether Defendants are liable for liquidated damages.

### V. Factual Allegations

### Plaintiff Yuseff Parris

54.     Plaintiff Parris worked for Defendants from in or around October 2014 until on or around March 17, 2018.

55.     From in or around October 2014 until in or around September 2017, Parris worked as a security guard at the 5Pointz Worksite.

56.     As a security guard, Parris' job duties included inspecting and patrolling the 5Pointz Worksite, monitoring the 5Pointz Worksite entrance, and checking the credentials of 5Pointz Worksite workers.

57.     Parris was also required to ensure that G&M and Lucky Nephew employees signed in and out upon entering and leaving the 5Pointz Worksite and to submit the employees' timecards or timesheets to Defendants at the end of the workday.

58.     During this time period, Parris regularly worked Mondays through Fridays, from approximately 6:00 a.m. until approximately 6:00 p.m., with a one (1) hour daily lunch break, for a total of approximately fifty-five (55) hours per week.

59.     In addition, Parris was required to work either Saturday or Sunday every week, from approximately 6:00 a.m. until approximately 2:00 p.m., with a one (1) hour daily lunch break, bringing his average work hours to approximately sixty-two (62) per week.

60.     In or around July 2017, Defendants informed Parris that they needed more employees who were certified fire guards and fire safety managers, and urged Parris to obtain said certifications.

61.     On or around September 21, 2017, Parris obtained a fire guard certification and thereafter held the role of fire guard in addition to his role as a security guard.

62.     As a fire guard, Parris's job duties included carrying a fire extinguisher, accompanying employees performing welding or grinding work on the job site, and being prepared to use the fire extinguisher if necessary.

63.     On or around November 3, 2017, Parris received a fire safety manager certification, and thereafter held the role of fire safety manager in addition to his roles as security guard and fire guard.

64.     As a fire safety manager, Parris supervised the fire guards, completed daily logs, and confirmed that all employees present on the worksite were in compliance with applicable fire safety rules.

65.     From on or around September 21, 2017 until in or around December 2017, Parris continued to work the same general hours that he worked as a security guard, for a total of approximately sixty-two (62) hours per week.

66.     While working as a security guard and as a fire guard, Parris regularly worked approximately forty (40) hours per week as a security guard and approximately twenty-two (22) hours per week as a fire guard.

67.     After Parris obtained his fire safety manager certification, until in or around December 2017, Parris regularly worked approximately forty (40) hours per week as a

security guard, approximately eight (8) hours per week as a fire guard, and approximately fourteen (14) hours per week as a fire safety manager.

68.     From the start of his employment until in or around December 2017, Parris was paid by check or cash with no accompanying paystub and without any withholdings for federal, state, and/or local taxes.

69.     In or around January 2018, Defendants began to pay Parris by company check with an accompanying Automatic Data Processing, Inc. ("ADP") paystub from which federal, state, and local taxes were withheld.

70.     From in or around January 2018 until the end of his employment, Parris regularly worked three (3) varying weekdays per week, from approximately 6:00 a.m. until approximately 2:00 p.m. each day, with a daily one (1) hour lunch break, for a total of approximately twenty-one (21) hours per week.

71.     Upon information and belief, starting in or around January 2018, Defendants reduced Parris' work hours in order to avoid paying overtime wages for any hours worked over forty (40) per week.

72.     At certain times during Parris' employment, Defendants tracked the hours that Parris worked by requiring him to punch in and out on Defendants' timekeeping system and/or to sign in and sign out on timecards or timesheets.

73.     Throughout his employment, Parris used three (3) different timecards to record his time, one (1) for each position he held.

74.     Throughout his employment, Parris was paid $13.00 per hour for all hours worked as a security guard, $15.00 per hour for all hours worked as a fire guard, and $22.00 per hour for all hours worked as a fire safety manager.

**Plaintiff Dawn Littlepage**

75.     Plaintiff Dawn worked for Defendants as a lift operator at the 5Pointz Worksite from in or around September 2017 until in or around October 2017.

76.     As a lift operator, Dawn's job duties included operating a construction lift that transported construction workers up and down the floors of the construction site.

77.     Throughout her employment, Dawn regularly worked Mondays through Fridays, from approximately 2:00 p.m. until approximately 10:00 p.m., and Saturdays from approximately 6:00 a.m. until approximately 2:00 p.m., with a daily thirty (30) minute lunch break, for a total of approximately forty-five (45) hours per week.

78.     Throughout Dawn's employment, Defendants tracked the hours that Dawn worked by requiring her to punch in and out on Defendants' timekeeping system and/or to sign in and out on timecards or timesheets.

79.     Throughout her employment, Dawn was paid $13.00 per hour for all hours worked, including those over forty (40) per week.

80.     Throughout her employment, Dawn was paid by check or cash with no accompanying paystub and without any withholdings for federal, state, and/or local taxes.

**Plaintiff Ntshona Littlepage**

81.     Plaintiff Ntshona worked for Defendants as a lift operator at the 5Pointz Worksite from in or around September 2017 until in or around March 2018.

82.     As a lift operator, Ntshona's job duties included operating a construction lift that transported construction workers up and down the floors of the construction site.

83.     From in or around September 2017 until in or around December 2017, Ntshona regularly worked Mondays through Fridays, from approximately 6:00 a.m. until

approximately 6:00 p.m., and Saturdays from approximately 6:00 a.m. until approximately 2:00 p.m., with a daily thirty (30) minute lunch break, for a total of approximately sixty-five (65) hours per week.

84.     During this time period, Ntshona was paid $13.00 per hour for all hours worked, including those over forty (40) per week.

85.     During this time period, Ntshona was paid by check or cash with no accompanying paystub and without any withholdings for federal, state and/or local taxes

86.     From in or around January 2018 until the end of her employment, Ntshona regularly worked Mondays through Fridays, from approximately 6:00 a.m. until approximately 6:00 p.m., with a daily thirty (30) minute lunch break, for a total of approximately fifty-seven and one-half (57.5) hours per week.

87.     During this time period, Ntshona was paid $13.00 per hour for the first forty (40) hours worked each week, and $19.50 per hour for all hours worked over forty (40) per week, and was paid by company check with an accompanying ADP from which federal, state, and local taxes were withheld.

88.     Throughout Ntshona's employment, Defendants tracked the hours that she worked by requiring her to punch in and out on Defendants' timekeeping system and/or to sign in and out on timecards or timesheets.

**Claims Common to All Plaintiffs**

89.     Throughout their employment with Defendants, Plaintiffs were non-exempt employees pursuant to the FLSA and NYLL and were entitled to overtime compensation.

90.     However, despite routinely working more than forty (40) hours per week, Plaintiffs were not always paid overtime compensation of one and one-half (1.5) times their

regular hourly rates of pay or the minimum wage, whichever is greater, for the hours they worked over forty (40) per week.

91.     Furthermore, Plaintiffs did not receive, at the time of hire or at any time thereafter, a payroll notice containing their rate or rates of pay and the designated payday, or any other information required by NYLL § 195(1).

92.     Defendants also failed to furnish Plaintiffs with each wage payment, a statement listing their regular and overtime rates of pay, the number of regular and overtime hours worked, gross wages, deductions, and anything otherwise required by NYLL § 195(3).

93.     Plaintiffs are aware of other current and/or former employees of Defendants who were not paid overtime compensation despite working over forty (40) hours per week, did not receive adequate payroll notices, and were not furnished with proper wage statements.

94.     Defendants violated federal and state law by willfully failing to pay Plaintiffs and similarly situated employees overtime compensation owed to them, and violated the NYLL by failing to provide Plaintiffs and other employees with statutory payroll notices and wage statements.

**AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE FLSA COLLECTIVE PLAINTIFFS**
(Overtime Violations under the FLSA)

95.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, repeat and reallege all prior allegations set forth above.

96.     Pursuant to the applicable provisions of the FLSA, Plaintiffs and the FLSA Collective Plaintiffs were entitled to overtime compensation of one and one-half (1.5)

times their regular hourly rates of pay or the statutory minimum wage, whichever is greater, for all hours worked in excess of forty (40) hours per week.

97.     Throughout the relevant time period, Plaintiffs and the FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per week during their employment with Defendants.

98.     Throughout the relevant time period, Defendants knowingly failed to pay Plaintiffs and the FLSA Collective Plaintiffs overtime wages of one and one-half (1.5) times their regular hourly rates of pay or the statutory minimum wage, whichever is greater, for all hours worked in excess of forty (40) hours in a work week.

99.     As a result of Defendants' violations of the law and failure to pay Plaintiffs and the FLSA Collective Plaintiffs the required overtime wages, Plaintiffs and the FLSA Collective Plaintiffs have been damaged and are entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

100.     As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs and the FLSA Collective Plaintiffs are entitled to an additional award of one hundred percent of all wages due ("liquidated damages").

101.     Judgment should be entered in favor of Plaintiffs and the FLSA Collective Plaintiffs and against Defendants on the First Cause of Action in the amount of their respective unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF
PLAINTIFFS, INDIVIDUALLY, AND THE CLASS PLAINTIFFS**
(Overtime Violations under the NYLL)

102.    Plaintiffs, on behalf of themselves and the Class Plaintiffs, repeat and reallege all prior allegations set forth above.

103.    Pursuant to the applicable provisions of NYLL § 650, *et seq*., and 12 NYCRR § 142-2.2, Plaintiffs and the Class Plaintiffs were entitled to overtime compensation of one and one-half (1.5) times their regular hourly rates of pay or the statutory minimum wage, whichever is greater, for all hours worked in excess of forty (40) hours per week.

104.    Plaintiffs and the Class Plaintiffs regularly worked in excess of forty (40) hours per week during their employment with Defendants.

105.    Throughout the relevant time period, Defendants knowingly failed to pay Plaintiffs and the Class Plaintiffs overtime wages of one and one-half (1.5) times their regular hourly rates of pay or the statutory minimum wage, whichever is greater, for each hour worked in excess of forty (40) hours in a workweek.

106.    As a result of Defendants' violations of the law and failure to pay Plaintiffs and the Class Plaintiffs the required overtime wages, Plaintiffs and the Class Plaintiffs have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, interest, and costs.

107.    As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs and the Class Plaintiffs are entitled to liquidated damages.

108.    Judgment should be entered in favor of Plaintiffs and the Class Plaintiffs and against Defendants on the Second Cause of Action in the amount of their respective

unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE CLASS PLAINTIFFS**
(Failure to Provide Payroll Notices Under the NYLL)

109.    Plaintiffs, on behalf of themselves and the Class Plaintiffs, repeat and reallege all prior allegations set forth above.

110.    Throughout the relevant time period, Defendants failed to furnish to Plaintiffs and the Class Plaintiffs notices containing their rates of pay and basis thereof; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer; and anything otherwise required by NYLL § 195(1).

111.    As Defendants failed to provide Plaintiffs and the Class Plaintiffs with notices as required by NYLL § 195(1), Plaintiffs and the Class Plaintiffs are entitled to liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00 each, along with all reasonable attorneys' fees and costs.

112.    Judgment should be entered in favor of Plaintiffs and the Class Plaintiffs and against Defendants on the Third Cause of Action in the amount of $5,000.00 each, along with attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE CLASS PLAINTIFFS**
(Failure to Provide Wage Statements Under the NYLL)

113.    Plaintiffs, on behalf of themselves and the Class Plaintiffs, repeat and reallege all prior allegations set forth above.

114.     Throughout the relevant time period, Defendants failed to furnish to Plaintiffs and the Class Plaintiffs, with each wage payment, a statement listing: their rates of pay and basis thereof; their regular and overtime hourly rates of pay; the number of regular and overtime hours worked, gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

115.     As Defendants failed to provide Plaintiffs and the Class Plaintiffs with payroll notices as required by NYLL § 195(3), Plaintiffs and the Class Plaintiffs are entitled to liquidated damages in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00 each, along with all reasonable attorneys' fees and costs.

116.     Judgment should be entered in favor of Plaintiffs and the Class Plaintiffs and against Defendants on the Fourth Cause of Action in the amount of $5,000.00 each, along with attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**WHEREFORE** Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs, and the Class Plaintiffs, pray for relief as follows:

a)   on the First Cause of Action for all overtime wages due to Plaintiffs and the FLSA Collective Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

b)   on the Second Cause of Action for all overtime wages due to Plaintiffs and the Class Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

c)   on the Third Cause of Action on behalf of Plaintiffs and the Class Plaintiffs for liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00 each, and reasonable attorneys' fees;

d)   on the Fourth Cause of Action on behalf of Plaintiffs and the Class Plaintiffs for liquidated damages in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00 each, and reasonable attorneys' fees;

e)   Costs and disbursements;

f)   Interest; and

g)   Such other and further relief as is just and proper.


Dated:  New York, New York
        March 6, 2020

                                        /s/ Adam Sackowitz
                                        Adam Sackowitz
                                        Katz Melinger PLLC
                                        280 Madison Avenue, Suite 600
                                        New York, New York 10016
                                        Telephone: (212) 460-0047
                                        Facsimile: (212) 428-6811
                                        ajsackowitz@katzmelinger.com
                                        Attorneys for Plaintiffs